**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| RHH LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:19cv1184 |
| | ) | |
| INNISFREE HOTELS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

This case comes before the Court on "Defendant Innisfree Hotels, Inc[.]'s Motion to Dismiss or in the Alternative to Transfer Venue Pursuant to 28 U.S.C. § 1404(a)" (Docket Entry 7) ("Defendant's Motion"). For the reasons that follow, the Court will deny Defendant's request to dismiss this action but will grant Defendant's request to transfer this action to the Northern District of Florida.[1]

### BACKGROUND

RHH LLC ("Plaintiff") initiated this action against Innisfree Hotels, Inc. ("Defendant"), seeking a declaratory judgment concerning Plaintiff's obligations under a contract. (Docket Entry 1 (the "Original Complaint"), ¶¶ 21-26.) In particular, the Original Complaint alleges:

---

[1] The undersigned United States Magistrate Judge will enter an order, rather than a recommendation, as to Defendant's Motion because the parties consented, pursuant to "28 U.S.C. § 636(c), to the exercise by a United States Magistrate Judge of jurisdiction in this case" (Docket Entry 12 at 1 (bracket omitted)) (referring case to undersigned "to conduct all proceedings including a jury or nonjury trial, to order the entry of judgment, and to conduct all post-judgment proceedings therein")). (See also Docket Entries 12-1, 12-2.)

"[Defendant] submitted an order to [Plaintiff] for, among other items, 180 dresser units" (the "Units"). (Id., ¶ 1.) "[Plaintiff] fulfilled the order, which was delivered for use at the Hampton Inn Pensacola Beach, Florida." (Id., ¶ 2.) Thereafter, a third party supplied refrigerators for the Units, and the Units sustained water damage. (See id., ¶ 3.) Plaintiff and Defendant have disputed the cause of the damage. According to Plaintiff, "[t]he Units would have been damaged due to the leaking refrigerators regardless of how the Units were constructed." (Id., ¶ 12.) In Defendant's view, "the Units contained defects resulting from [Plaintiff's] use of inappropriate materials and a failure to comply with product submittal specifications." (Id., ¶ 13 (internal quotation marks omitted).) However, the "shop drawings [did] not require [the use of] high pressure laminate . . . in the [Unit's] interior — only finish to match." (Id., ¶ 14.) Defendant's designer approved such drawings, which mirrored ones Plaintiff had submitted "for other Hampton projects in which [Plaintiff and Defendant] engaged," without objection from Defendant. (See id., ¶ 15.)

"In a letter dated October 28, 2019 (the 'Demand Letter'), [Defendant], through its legal counsel, demanded that [Plaintiff] replace all of the defective Units and modify all of the other Units." (Id., ¶ 16.) According to the Demand Letter, [Plaintiff] has failed to fulfill obligations that [Defendant] alleges [Plaintiff] has under the agreement(s) between the parties and applicable law." (Id., ¶ 17.) The Demand Letter represented "that

-2-

[Defendant] intend[ed] to pursue legal remedies if [Plaintiff] d[id] not meet its demands." (Id., ¶ 18.) Plaintiff has denied that it supplied a defective product to Defendant. (Id., ¶ 19.) In connection with the foregoing allegations, the Original Complaint seeks "a judicial declaration that Plaintiff owes no obligation to Defendant to replace all of the defective Units and modify all of the other Units." (Id., ¶ 26.)

Several weeks later, Plaintiff filed an amended complaint (Docket Entry 3) (the "Amended Complaint") as of right. See Fed. R. Civ. P. 15(a)(1) (allowing one amendment "as a matter of course" within 21 days of serving complaint or within 21 days of service of responsive pleading). The Amended Complaint effectively mirrors the Original Complaint except that it references another letter from Defendant, which Plaintiff received after filing the Original Complaint. (Compare Docket Entry 1, with Docket Entry 3.) In particular, the Amended Complaint alleges that, "in further correspondence dated January 21, 2020 (the 'Final Demand Letter'), [Defendant], through its legal counsel, . . . indicated that it consider[ed Plaintiff] to be in default, and that it intend[ed] to seek recoupment from [Plaintiff], including through legal means." (Docket Entry 3, ¶ 18.)

Instead of answering the Amended Complaint, Defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), or, alternatively, "to transfer this action to the United States District Court for the Northern District of Florida pursuant to 28 U.S.C. § 1404(a)" ("Section

-3-

1404(a)"). (Docket Entry 7 at 1; see also Docket Entry 8 (the "Memorandum").) Along with the Memorandum, Defendant tendered a sworn declaration from Kevin D. Warwick, one of Defendant's employees (Docket Entry 8-1 at 2-5), as well as copies of the following documents, among other items: the purchase order from Defendant to Plaintiff (id. at 7-26) (the "Purchase Order"); the corresponding invoice from Plaintiff to Defendant (id. at 28-51); the relevant shipment packing lists (id. at 56-65); a "notice sent to [Plaintiff from Defendant] . . . detailing certain defects manifesting in furniture items ordered pursuant to the Purchase Order" (id. at 3, 91); the Demand Letter (id. at 93-95); "the letter response received from [Plaintiff] addressing the [Demand Letter]" (id. at 4, 97-98); and the Final Demand Letter (id. at 100-02).

Plaintiff responded in opposition to Defendant's Motion, asserting that (i) the Amended Complaint adequately states a claim for a declaratory judgment (Docket Entry 9 (the "Response") at 3-7), (ii) venue remains proper in the Middle District of North Carolina (id. at 7-9), (iii) the Northern District of Florida lacks personal jurisdiction over Plaintiff (id.), and (iv) "the weighing of convenience factors favors [Plaintiff]'s choice of venue" (id. at 9-12). As exhibits to the Response, Plaintiff attached a sworn declaration from Michael Felsen, "the President and CEO of [] Plaintiff" (Docket Entry 9-1 (the "Felsen Declaration"), ¶ 2), as well as copies of the Demand Letter (id. at 5-7), Plaintiff's response to the Demand Letter (id. at 8-9), and the Final Demand

-4-

Letter (id. at 10–12).  Defendant replied, challenging Plaintiff's personal-jurisdiction argument.  (See Docket Entry 10 (the "Reply") at 1–7.)

Thereafter, upon review of the Amended Complaint's jurisdictional allegations, the Court (per the undersigned United States Magistrate Judge) directed Plaintiff to clarify whether complete diversity existed between the parties, for purposes of subject-matter jurisdiction.  (See Docket Entry 13 at 2–3 (noting Amended Complaint's failure to address citizenship of Plaintiff's members).)[2]  Plaintiff then moved for leave to amend the Amended Complaint, attaching a proposed second amended complaint.  (Docket Entries 14 (the "Motion to Amend"), 14-1 (the "Proposed Second Amended Complaint".)   The Proposed Second Amended Complaint replicates the Amended Complaint in substance (compare Docket Entry 3, with Docket Entry 14-1) but clarifies that six members possess an ownership interest in Plaintiff and that none qualifies as a citizen of Florida, such that complete diversity of citizenship exists (see Docket Entry 14-1, ¶¶ 7–10).  Without an objection from Defendant (see Docket Entry dated Mar. 15, 2021), the Court (per the undersigned) granted the Motion to Amend (see Text Order dated Mar. 16, 2021 (directing Plaintiff to file Second Amended

---

[2]     Because the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, does not create federal jurisdiction, see Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240 (1937), it "allow[s] federal courts to issue declaratory judgments only in cases that . . . present a valid basis for subject[-]matter jurisdiction, i.e., diversity or federal question jurisdiction," Dunn Computer Corp. v. Loudcloud, Inc., 133 F. Supp. 2d 823, 826 (E.D. Va. 2001).

Case 1:19-cv-01184-LPA   Document 16   Filed 03/25/21   Page 5 of 32

Complaint)).  (See also Docket Entry 15 (the "Second Amended Complaint").)[3]

## DISCUSSION

### II. Defendant's Motion

### A.  Dismissal

As a threshold matter, the parties appear to dispute the source of law that governs the Court's inquiry into whether the Second Amended Complaint alleges a justiciable claim.  In that regard, the Memorandum asserts that the Court lacks jurisdiction to render a declaratory judgment because Plaintiff has failed to allege an actual controversy.  (See Docket Entry 8 at 3-4 (citing N.C. Gen. Stat. § 1-254 and Gaston Bd. of Realtors, Inc. v. Harrison, 311 N.C. 230, 316 S.E.2d 59 (1984) (interpreting North Carolina law)).)  In contrast, the Response characterizes the question as "a federal procedural issue" and therefore "focuses on

---

[3]    The Court construes Defendant's Motion and the related briefing to apply against the Second Amended Complaint.  (See Text Order dated Mar. 16, 2021 (explaining that parties need not refile motion or briefs).)  "As a general rule, an amended pleading ordinarily supersedes the original and renders it of no legal effect."  Young v. City of Mt. Rainier, 238 F.3d 567, 572 (4th Cir. 2001) (internal quotation marks omitted).  "In such circumstances, [a] motion to dismiss . . . directed at a pleading that is no longer operative . . . is therefore moot."  Hairston v. North Carolina Agric. & Tech. State Univ., No. 1:04CV1203, 2005 WL 2136923, at *1 (M.D.N.C. Aug. 5, 2005) (unpublished).  "However, '[because] the defects raised in [Defendant's M]otion remain in the [Second Amended Complaint], the [C]ourt simply may consider [Defendant's M]otion as being addressed to the [Second A]mended [Complaint]' because to 'hold otherwise would be to exalt form over substance.'"  Arteaga v. Ecofoam Insulation & Coating of Charleston, LLC, No. 9:18-cv-2147, 2018 WL 4100034, at *1 (D.S.C. Aug. 28, 2018) (unpublished) (quoting 6 Charles Alan Wright et al., Federal Practice and Procedure § 1476 (3d ed.)).

-6-

federal law" but notes that the application of North Carolina law would yield the same outcome.  (See Docket Entry 9 at 4 n.2.)

The Second Amended Complaint cites neither federal nor North Carolina law as the basis for the declaratory judgment.  (See Docket Entry 15, ¶¶ 1-30.)  The Declaratory Judgment Act (the "Act") provides that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).[4]  "[T]he phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III."  MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007).  "[W]hether [a] plaintiff has made out a 'case or controversy' between himself and the defendant within the meaning of Art[icle] III" constitutes "the threshold question in every federal case, determining the power of the court to entertain the suit."  Warth v. Seldin, 422 U.S. 490, 498 (1975).

"[W]hether a plaintiff in federal court has standing to maintain an action is a question of federal, not state law."  Miller v. Augusta Mut. Ins. Co., 157 F. App'x 632, 636 (4th Cir. 2005).  Consistent with that principle, "[f]ederal standards guide the inquiry as to the propriety of declaratory relief in federal

---

[4]     North Carolina law similarly authorizes "[a]ny person interested under a . . . written contract . . . [to] obtain a declaration of rights, status, or other legal relations."  N.C. Gen. Stat. § 1-254.

-7-

courts, even when the case is under the court's diversity jurisdiction." White v. National Union Fire Ins. Co., 913 F.2d 165, 167 (4th Cir. 1990). Accordingly, the Second Amended Complaint must satisfy Article III standards in alleging an actual controversy for purposes of this declaratory action, and the Court applies federal standards to determine whether subject-matter jurisdiction exists.

### 1. Relevant Standards

Although Defendant's Motion and Memorandum invoke only Rule 12(b)(6), the Court construes Defendant's Motion to seek dismissal under Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)") because Defendant has raised a question about Plaintiff's standing (see Docket Entry 8 at 3-4). See Payne v. Chapel Hill N. Props., LLC, 947 F. Supp. 2d 567, 572 (M.D.N.C. 2013) ("Generally, challenges to standing are addressed under Rule 12(b)(1) for lack of subject matter jurisdiction."). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R.R. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). "[T]he plaintiff bears the burden of 'clearly . . . alleg[ing] facts demonstrating that he is a proper party to invoke judicial resolution of the dispute.'" Payne, 947 F. Supp. 2d at 572 (quoting Warth, 422 U.S. at 518).

-8-

In order to satisfy the Article III "case-or-controversy" requirement, in the context of a declaratory judgment action,

> the dispute [must] be "definite and concrete, touching the legal relations of parties having adverse legal interests"; and . . . be "real and substantial" and "admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."

MedImmune, 549 U.S. at 127 (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240–41 (1937)). Stated differently, "a federal court may properly exercise jurisdiction in a declaratory judgment proceeding when . . . the complaint alleges an 'actual controversy' between the parties 'of sufficient immediacy and reality to warrant issuance of a declaratory judgment . . . .'" Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., Inc., 386 F.3d 581, 592 (4th Cir. 2004) (quoting 28 U.S.C. § 2201 and North Jefferson Square Assocs. v. Virginia Hous. Dev. Auth., 94 F. Supp. 2d 709, 714 (E.D. Va. 2000)).

Additionally, "[a] federal court has the discretion to decline to entertain a declaratory judgment action, but, under the law of th[e United States Court of Appeals for the Fourth] Circuit, . . . must do so only for 'good reason.'" Continental Cas. Co. v. Fuscardo, 35 F.3d 963, 965 (4th Cir. 1994) (quoting Aetna Cas. & Sur. Co. v. Quarles, 92 F.2d 321, 324 (4th Cir. 1937)). In deciding whether to exercise such jurisdiction, once established, a court should consider

> (1) whether the judgment "will serve a useful purpose in clarifying the legal relations in issue;" (2) whether the judgment "will terminate and afford relief from the

-9-

uncertainty, insecurity, and controversy giving rise to the proceeding;" (3) considerations of federalism, efficiency, and comity; [and] (4) "whether the declaratory judgment action is being used merely as a device for procedural fencing - that is, to provide another forum in a race for res judicata or to achieve a federal hearing in a case otherwise not removable."

Norfolk Dredging Co. v. Phelps, 433 F. Supp. 2d 718, 721 (E.D. Va. 2006) (quoting Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co., 139 F.3d 419, 422-23 (4th Cir. 1998)).

        2. Analysis

        According to Defendant's Memorandum, the Second Amended Complaint falls short because no actual controversy exists between the parties. (See Docket Entry 8 at 3-5.) In particular, the Memorandum asserts that "'[a] mere threat to sue or apprehension of a suit is not sufficient to establish an actual controversy.'" (Id. at 4 (quoting Klingspor Abrasives, Inc. v. Woolsey, No. 5:08CV-152, 2009 WL 2397088, at *2 (W.D.N.C. July 31, 2009) (unpublished)).) The Memorandum maintains that Plaintiff has "only alleged that [Defendant] has threatened litigation in a letter." (Id. at 5.) As explained in the previous subsection, the Memorandum argues that the lack of actual controversy deprives the Court of subject-matter jurisdiction to render a declaratory judgment. (See id. at 3-4.)

        In this context, the Court may look to the correspondence between the parties "without converting the proceeding to one for summary judgment," Richmond, Fredericksburg & Potomac R.R., 945 F.2d at 768. The Demand Letter, in relevant part, states:

-10-

> Please provide written assurance that [Plaintiff] will
> timely fulfill its warranty obligations at no cost to
> [Defendant], and provide a detailed schedule confirming
> when the warranty work will commence and be completed.
> It is imperative that all of the work be completed no
> later than February 28, 2020. Should [Plaintiff] be
> unwilling to satisfy its warranty obligations or fail to
> provide written assurance, [Defendant] intend[s] on
> pursuing any and all legal remedies available, including
> but not limited to holding [Plaintiff] legally
> responsible for all costs incurred by [Defendant] in
> replacing and remedying [Plaintiff]'s defective work.

(Docket Entry 9-1 at 6-7.) In response to the Demand Letter,
Plaintiff offered to replace some of the damaged products and to
cover part of the cost, expressing "hope that [Plaintiff and
Defendant could] work this out amicably by themselves." (Id. at
9.)

The following month, via the Final Demand Letter, Defendant
rejected Plaintiff's offer. (Id. at 10.) The Final Demand Letter
maintains that Plaintiff violated its "implied warranty obligation
under the Florida Uniform Commercial Code (UCC)" and notifies
Plaintiff that Defendant had begun "documenting the defective
condition of the Units and collecting evidence as to the cause of
defects and extent of damage." (Id. at 11.) The Final Demand
Letter further details Defendant's plan for disposing of the Units
and invites Plaintiff, by February 28, 2020, "to send a
representative to inspect the [Units] and collect any evidence
[Plaintiff] believes will be necessary and relevant to future
proceedings." (Id.) Moreover, the Final Demand Letter explains:

> For failing to fulfill warranty obligations in accordance
> with the Florida UCC and purchase order terms as detailed
> in [the Demand Letter], [Defendant] notifies [Plaintiff's
> counsel] that [Plaintiff] is in breach. [Defendant]

-11-

hereby holds [Plaintiff] in default. As of this date, [Defendant] will proceed in covering [Plaintiff]'s breach by procuring substitution goods. [Defendant] has obtained estimates for goods conforming to the original specifications and will proceed with purchasing and installing those goods. [Defendant] is intent on recouping the benefit for which [it] paid, and to that end will pursue any and all available legal remedies to recover those costs associated with covering [Plaintiff]'s breach, including all oversight costs incurred by [Defendant], attorney's fees, and court and other costs incurred in pursuing collection if necessary.

(Id.)

Depending on the circumstances, "[t]hreatened litigation can be sufficient to establish the actual controversy requirement," Kettler Int'l, Inc. v. Starbucks Corp., 55 F. Supp. 3d 839, 847 (E.D. Va. 2014); but see Marx Indus., Inc. v. Chestnut Ridge Foam, Inc., 903 F. Supp. 2d 358, 367 (W.D.N.C. 2012) ("The mere apprehension or threat of litigation, by letter or otherwise, are generally not found to establish an actual controversy.").[5] For example, a neighboring court found the actual controversy

---

[5] After the Marx Industries court acknowledged the general rule concerning threats of litigation, it nonetheless concluded that an actual controversy existed in that case, in part because of the "evidence of potential ongoing liability while the alleged wrongdoer waited for suit." Marx Indus., 903 F. Supp. 2d at 367 (distinguishing Gaston Bd. of Realtors, 311 N.C. at 234, 316 S.E.2d at 62, Klingspor Abrasives, 2009 WL 2397088, at *3, and Nat'l Travel Servs., Inc. v. State ex rel. Cooper, 153 N.C. App. 289, 569 S.E.2d 667, 669 (2002)). Here, in support of the jurisdiction-based dismissal argument focused on the lack of an actual controversy, Defendant cited all three of the cases that Marx Industries distinguished. (See Docket Entry 8 at 3-4.) The Court likewise deems those cases distinguishable from the circumstances here, insofar as those cases involved neither the prospect of inevitable litigation nor the potential for ongoing liability. See Gaston Bd. of Realtors, 311 N.C. at 234-36, 316 S.E.2d at 61-62; Nat'l Travel Servs., 153 N.C. App. at 293-94, 569 S.E.2d at 669-70; Klingspor Abrasives, 2009 WL 2397088, at *3-4.

-12-

requirement satisfied when a defendant in a declaratory action had notified the plaintiff of the breach, informed the plaintiff about the extent of damages, communicated an intent to rescind the contract, stated that the defendant's counsel had received instructions to initiate a lawsuit, and filed a related claim in state court. See Kettler Int'l, 55 F. Supp. 3d at 847. In contrast, another neighboring court concluded that no such controversy existed when a defendant in a declaratory action had retained counsel and expressed to the plaintiff both an intent to pursue his legal rights and a desire "to resolve the issue without litigation, if possible." Klingspor Abrasives, 2009 WL 2397088, at *3.[6]

Here, the circumstances resemble Kettler International more closely than Klingspor Abrasives. The Final Demand Letter memorializes a concrete dispute between the parties and includes many specific details about Defendant's future plans, to include its intent to dispose of the Units and its receipt of estimates to obtain replacement products. (See Docket Entry 9-1 at 10–11.) Additionally, the Final Demand Letter imposes a deadline by which Plaintiff must inspect and document the condition of the Units, to preserve evidence for unspecified "future proceedings." (Id. at

---

[6] The Court views Kettler International and Klingspor Abrasives as illustrative examples of the actual-controversy analysis. As mentioned in the preceding footnote, Defendant cited Klingspor Abrasives in its Memorandum, and independent research confirmed that such cases conform to the generally accepted, case-specific inquiry into the nature of a dispute for purposes of establishing jurisdiction over a declaratory-judgment action.

-13-

11-12.)  Under those circumstances, the Second Amended Complaint does not seek a declaration concerning "a hypothetical state of facts," MedImmune, 549 U.S. at 127 (quoting Haworth, 300 U.S. at 240-41).  (See Docket Entry 15, ¶¶ 1-5.)  Instead, the record demonstrates an actual disagreement about what caused the damage to the Units (leaking refrigerators, or some defect in the Units' construction) and, correspondingly, about whether Plaintiff bears any legal obligation to remedy the situation.  (See id.; see also Docket Entry 9-1 at 5-12.)  Also, unlike in Klingspor Abrasives, Defendant has expressed no interest in a negotiated resolution.  (See Docket Entry 9-1 at 10-12.)  Defendant's rejection of Plaintiff's settlement offer highlights that circumstance, as well as the "immediacy and reality" of the dispute, Volvo Constr. Equip., 386 F.3d at 592 (internal quotation marks omitted).  (See Docket Entry 9-1 at 10 (relating that Defendant's counsel "[had] discussed [Plaintiff's] offer of settlement with [Defendant]" and that "[Defendant found such] offer unacceptable").)  Accordingly, the Complaint satisfies the Article III case-or-controversy requirement such that the Court possesses subject-matter jurisdiction.

As far as the Court's "discretion to decline to entertain a declaratory judgment action," Fuscardo, 35 F.3d at 965, Defendant has demonstrated no "good reason," id. (quoting Quarles, 92 F.2d at 324), for refusing jurisdiction here.  To the extent the Memorandum raises efficiency concerns or suggests that Plaintiff has "attempt[ed] to usurp [Defendant's] inherent right to choose the

-14-

time and place of litigation" or "[ha]s engag[ed] in improper procedural fencing" (Docket Entry 8 at 5), Defendant has failed to develop those arguments, and bald assertions cannot qualify as good reasons.  To the contrary, a declaration of Plaintiff's obligations under the contract would "serve a useful purpose in clarifying the legal relations in issue," Phelps, 433 F. Supp. 2d at 721 (quoting Aetna Cas. & Sur., 139 F.3d at 422-23), insofar as both parties deny financial responsibility for replacing or otherwise remedying the damaged Units.

Additionally, as of the date of the Final Demand Letter, January 21, 2020, Defendant planned to incur additional expenses to "cover[ Plaintiff]'s breach" and intended to "recover those costs" from Plaintiff. (Docket Entry 9-1 at 11.)  The Final Demand Letter further alludes to continuing damages, i.e., "the ongoing effect that [Plaintiff]'s breach has had on [Defendant]'s business." (Id.; see also id. at 6 ("[T]he continued inability to use the[] Units for their intended purpose inconveniences hotel patrons and has a damaging effect on [Defendant]'s business.").)  As a result, a declaratory judgment "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding," Phelps, 433 F. Supp. 2d at 721 (quoting Aetna Cas. & Sur., 139 F.3d at 422-23), i.e., whether Plaintiff must pay for the damages that evidently continued to accrue.  See also Marx Indus., 903 F. Supp. 2d at 367 (finding that, in a case of "potential ongoing liability . . . a declaratory judgment would serve to

-15-

clarify the parties' rights and afford relief from uncertainty in what appears to be unavoidable litigation").

Finally, the Court need not decline jurisdiction on the grounds of "federalism, efficiency, [or] comity," Phelps, 433 F. Supp. 2d at 721 (quoting Aetna Cas. & Sur., 139 F.3d at 422-23), as those concerns bear no particular significance under the circumstances. Although Defendant has mentioned inefficiency as grounds for dismissing this action (Docket Entry 8 at 5), the Memorandum fails to explain how a declaratory judgment would fail to resolve the entire dispute between the parties. As to federalism and comity, the record reflects neither the pendency of a separate suit in state court, nor support for the notion that Plaintiff initiated this action "in a race for res judicata or to achieve a federal hearing in a case otherwise not removable," Phelps, 433 F. Supp. 2d at 721 (quoting Aetna Cas. & Sur., 139 F.3d at 422-23). For those reasons, the Court will exercise its discretion to accept jurisdiction.

## B. Transfer

### 1. Relevant Standards

Under Section 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ." 28 U.S.C. § 1404(a). "Upon consideration of [a] motion to transfer venue, th[e] Court must make two inquiries: (1) whether [the plaintiff's] claims might have been brought in the [transferee court], and (2) whether the

-16-

interest of justice and the convenience of the parties justify transfer to [such district]." LG Elecs. v. Advance Creative Comput. Corp., 131 F. Supp. 2d 804, 809 (E.D. Va. 2001). "The phrase 'where it might have been brought' in [S]ection 1404(a) refers to a forum where venue originally would have been proper for the claim and where a defendant originally would have been subject to personal jurisdiction." Kotsonis v. Superior Motor Express, 539 F. Supp. 642, 645 (M.D.N.C. 1982); see also Harman v. Pauley, 522 F. Supp. 1130, 1133 (S.D.W. Va. 1981) ("The transferee court must have or be able to obtain personal jurisdiction over the defendant; otherwise, the Court must find the transfer improper.").

In turn, the personal-jurisdiction analysis involves a two-part inquiry. "When a federal court sits in diversity, it 'has personal jurisdiction over a non-resident defendant if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process.'" Perdue Foods LLC v. BRF S.A., 814 F.3d 185, 188 (4th Cir. 2016) (quoting Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1199 (4th Cir. 1993)). As to the latter requirement,

> [t]he Due Process Clause contemplates that a court may assert jurisdiction over a nonresident defendant through either of two independent avenues. First, a court may find specific jurisdiction based on conduct connected to the suit. If the defendant's contacts with the State are also the basis for the suit, those contacts may establish specific jurisdiction. Second, a court may exercise personal jurisdiction under the theory of general jurisdiction, which requires a more demanding showing of "continuous and systematic" activities in the forum state.

-17-

_Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co._, 682 F.3d 292, 302 (4th Cir. 2012) (internal citation and quotation marks omitted).

As concerns convenience and the interest of justice, the Court considers the following discretionary factors:

> (1) the plaintiff's initial choice of forum; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing and unwilling witnesses; (4) possibility of a view of the premises, if appropriate; (5) enforceability of a judgment, if one is obtained; (6) relative advantage and obstacles to a fair trial; (7) other practical problems that make a trial easy, expeditious, and inexpensive; (8) administrative difficulties of court congestion; (9 local interest in having localized controversies settled at home; (10) appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action; and (11) avoidance of unnecessary problems with conflicts of law.

_Speed Trac Techs., Inc. v. Estes Express Lines, Inc._, 567 F. Supp. 2d 799, 802 (M.D.N.C. 2008) (quoting _Plant Genetic Sys., N.V. v. Ciba Seeds_, 933 F. Supp. 519, 527 (M.D.N.C. 1996)); _see also_ _Lynch v. Vanderhoef Builders_, 237 F. Supp. 2d 615, 617 (D. Md. 2002) (grouping factors to include "witness convenience and access, . . . convenience of the parties, and . . . the interest of justice"). The movant bears the burden of proving that the balance of factors favors transfer. _See_ _Speed Trac Techs._, 567 F. Supp. 2d at 803.

       2. Analysis

       a. Personal Jurisdiction

In support of Defendant's request to transfer this action to the Northern District of Florida, the Memorandum fails to address

-18-

whether the Northern District of Florida would possess personal jurisdiction (general or specific) over Plaintiff. (<u>See</u> Docket Entry 8 at 1–11.) The Response asserts that "[Plaintiff] is not subject to personal jurisdiction in Florida, and transfer to Florida is improper as a matter of law." (Docket Entry 9 at 8.)[7] However, the Reply maintains that bases exist for both general and specific personal jurisdiction, such that transfer remains appropriate. (<u>See</u> Docket Entry 10 at 1–7.)

To decide the personal-jurisdiction question, the Court first considers whether the "applicable state long-arm statute," <u>Perdue Foods</u>, 814 F.3d at 188 (quoting <u>Nichols</u>, 991 F.2d at 1199), authorizes the exercise of jurisdiction by the Northern District of Florida. Under Florida's long-arm statute, a person submits "to the [specific personal] jurisdiction of the courts of [Florida]" by, among other things, "[b]reaching a contract in [Florida] by failing to perform acts required by the contract to be performed in [Florida]." Fla. Stat. § 48.193(1)(a)(7). "Since the extent of the long-arm statute is governed by Florida law, federal courts are required to construe it as would the Florida Supreme Court. Absent some indication that the Florida Supreme Court would hold otherwise, [federal courts] are bound to adhere to decisions of

_____

[7]    The Response explicitly contests the existence of <u>general</u> personal jurisdiction without addressing the standard for <u>specific</u> personal jurisdiction. (<u>See</u> Docket Entry 9 at 8 ("In order for Plaintiff to be subject to general jurisdiction in Florida, [Defendant] must demonstrate that Plaintiff's contacts with Florida are 'continuous and systematic.'" (quoting <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 415 (1984))).)

-19-

[Florida's] intermediate courts." Sculptchair, Inc. v. Century Arts, Ltd., 94 F.3d 623, 627 (11th Cir. 1996) (internal citation and quotation marks omitted); see also Assicurazioni Generali, S.p.A. v. Neil, 160 F.3d 997, 1003 (4th Cir. 1998) ("A federal court can depart from an intermediate court's fully reasoned holding as to state law only if 'convinced' that the state's highest court would not follow that holding."). "Under [Florida law], [a non-resident] company [remains] subject to personal jurisdiction in Florida to defend a complaint alleging breach of contract, where the parties' agreement obligated the defendant [company] to provide equipment to the plaintiff in Florida and the plaintiff alleged . . . that [the equipment] did not conform to contract specifications." Intego Software, LLC v. Concept Dev., Inc., 198 So. 3d 887, 894 (Fla. Dist. Ct. App. 2016).

Here, the Second Amended Complaint and associated exhibits indicate that Defendant claimed a breach of contract in its correspondence with Plaintiff. (See Docket Entry 15, ¶¶ 21-22; see also Docket Entry 9-1 at 5-7; Docket Entry 9-1 at 10-12.) More specifically, Defendant has asserted that "[the Units] did not conform to contract specifications," Intego Software, 198 So. 3d at 894. (See Docket Entry 9-1 at 5-7; Docket Entry 9-1 at 10-12.) Although Plaintiff disputes the facts underlying that claim (Docket Entry 15, ¶ 26), the record fairly supports the notion that Plaintiff's conduct, as alleged by Defendants, would subject Plaintiff to specific personal jurisdiction in the Northern District of Florida (see, e.g., Docket Entry 8-1 at 7 (Purchase

-20-

Order indicating shipment to Pensacola, Florida); Docket Entry 9-1 at 6 (Demand Letter referencing "[Plaintiff's] contractual and implied warranty obligations"); Docket Entry 9-1 at 11 (Final Demand Letter "notif[ying Plaintiff]" of breach based on its "fail[ure] to fulfill warranty obligations in accordance with the Florida UCC and [P]urchase [O]rder terms")).[8]  Because the foregoing circumstances fit within at least one provision of Florida's long-arm statute, Defendant has satisfied the first element of the specific personal-jurisdiction analysis.[9]

Continuing to the second element of that inquiry:

[The Fourth Circuit] ha[s] synthesized the due[-]process requirements for asserting specific personal jurisdiction into a three-prong test: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff[']s[] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable."

UMG Recordings, Inc. v. Kurbanov, 963 F.3d 344, 351–52 (4th Cir. 2020) (quoting Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009)).  "The first prong articulates the

_____

    [8]    The Northern District of Florida encompasses Escambia County, 28 U.S.C. § 89(a), the location of Defendant's Pensacola warehouse (see Docket Entry 8-1 at 7).

    [9]    Florida's long-arm statute also provides for general personal jurisdiction over "[a] defendant who is engaged in substantial and not isolated activity within [Florida], whether such activity is wholly interstate, intrastate, or otherwise . . . ." Fla. Stat. § 48.193(2).  Because that statute separately authorizes Florida courts to exercise specific personal jurisdiction over Plaintiff for purposes of this action, the Court declines to consider issues relating to general personal jurisdiction.

-21-

minimum contacts requirement of constitutional due process that the defendant purposefully avail himself of the privilege of conducting business under the laws of the forum state." Consulting Eng'rs, 561 F.3d at 278. As concerns "purposeful availment," the Court weighs the following factors:

> (1) whether the defendant maintained offices or agents in the State; (2) whether the defendant maintained property in the State; (3) whether the defendant reached into the State to solicit or initiate business; (4) whether the defendant deliberately engaged in significant or long-term business activities in the State; (5) whether a choice of law clause selects the law of the State; (6) whether the defendant made in-person contact with a resident of the State regarding the business relationship; (7) whether the relevant contracts required performance of duties in the State; and (8) the nature, quality, and extent of the parties' communications about the business being transacted.

UMG Recordings, Inc., 963 F.3d at 352 (quoting Sneha Media & Ent., LLC v. Associated Broad. Co. P. Ltd., 911 F.3d 192, 198-99 (4th Cir. 2018)). Under the second prong, "the defendant's contacts with the forum state [must] form the basis of the suit." Consulting Eng'rs, 561 F.3d at 278–79. Finally, factors relevant to the third prong

> include: (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

Id. at 279.

Here, the application of those factors satisfies due-process requirements such that a Florida court may exercise specific personal jurisdiction over Plaintiff. As for Plaintiff's

-22-

"purposeful availment," the Felsen Declaration establishes that
"[Plaintiff] has no offices, employees, business records, property,
bank accounts or other presence in Florida." (Docket Entry 9-1,
¶ 5.) At the same time, however, the Felsen Declaration
acknowledges an unspecified number of communications "by telephone,
facsimile, mail, or electronic mail" (id., ¶ 10) relating to
contract negotiations, to arrangements for the delivery of
furniture, including the Units (id.), "for a hotel in Pensacola,
Florida" (id., ¶ 6), and to "discussions regarding [Defendant]'s
warranty claims" (id., ¶ 11). Moreover, the verified copies of the
correspondence between Plaintiff and Defendant establish that their
business relationship began before August 2017, when Defendant sent
the at-issue Purchase Order. In that regard, Plaintiff's response
to the Demand Letter mentions "other Hampton projects in which
[Plaintiff] engaged with [Defendant]" (Docket Entry 9-1 at 8
(emphasis added)) and offers to cover certain costs related to
Defendant's complaints about the Units "because [Plaintiff] values
[Defendant] as a customer" (id. at 9). The response further
conditions one aspect of that offer on "[Plaintiff] receiv[ing]
another order for a full renovation of the goods at another
property" (id.). Such evidence suggests an "ongoing business
relationship with a resident of [Florida, which] indicates that
[Plaintiff] has purposefully directed activities at [that] forum."
Taltwell, LLC v. Zonet USA Corp., No. 3:07cv543, 2007 WL 4562874,
at *8 (E.D. Va. Dec. 20, 2007) (unpublished).

-23-

The nature of this action plainly satisfies the second prong, as the foregoing "contacts with the forum state form the basis of [Plaintiff's] suit," Consulting Eng'rs, 561 F.3d at 278–79. "Where activity in the forum state is 'the genesis of [the] dispute,' this prong is easily satisfied." Tire Eng'g & Distrib., 682 F.3d at 303 (quoting CFA Inst. v. Institute of Chartered Fin. Analysts of India, 551 F.3d 285, 295 (4th Cir. 2009).

Turning to the third-prong factors, "such an analysis ensures that litigation is not so gravely difficult and inconvenient as to place the defendant at a severe disadvantage in comparison to his opponent." CFA Inst., 551 F.3d at 296 (internal quotation marks omitted). No such disadvantage appears here, given Plaintiff's reasonably accessible headquarters in North Carolina (Docket Entry 9-1, ¶ 4). See Fallon Luminous Prods. Corp. v. Multi Media Elecs., Inc., 343 F. Supp. 2d 502, 508 (D.S.C. 2004) (deeming exercise of personal jurisdiction consistent with due process when plaintiff initiated lawsuit in South Carolina against defendant based in New York). As far as Florida's interests in this action, Defendant (a Florida citizen) has expressed an intent to litigate a claim under the Florida UCC (see Docket Entry 9-1 at 11), and "[Florida] has a paternal interest in the recovery by one of its citizens of appropriate compensation," Lee v. Walworth Valve Co., 482 F.2d 297, 299 (4th Cir. 1973). None of the other reasonableness factors carries decisive weight; indeed, the Response fails to address any such factor (see Docket Entry 9 at 7–9). As summarized by Defendant, under the circumstances, "[Plaintiff] cannot reasonably

-24-

be surprised or prejudiced by being subject to [specific] personal jurisdiction in Florida." (Docket Entry 10 at 6.)

In sum, the Northern District of Florida possesses specific personal jurisdiction over Plaintiff, and the exercise of such jurisdiction comports with due-process principles.

  b. Interest of Justice and Convenience of the Parties

The Memorandum contends that the applicable factors favor transfer under Section 1404(a). (See Docket Entry 8 at 7-11.) In that regard, the Memorandum emphasizes that Plaintiff's choice of forum merits less weight in the context of a declaratory action. (See id. at 10.)[10] The Memorandum further states that Florida law should govern the dispute (see id. at 8-10; see also id. at 5-7 (arguing for application of Florida law in support of request to dismiss action)), that transfer would facilitate "access to sources of proof" (id. at 11), that "the availability of compulsory process for attendance of unwilling witnesses weighs in favor of Florida" (id.), and that the Units "remain in Florida today" (id. at 10). Finally, the Memorandum concludes that transfer would involve fewer "conflicts of law and relative obstacles to a fair trial." (Id. at 11.)

_____

  [10]  In particular, the Memorandum asserts that, "while there is ordinarily a strong presumption in favor of a plaintiff's choice of forum, that presumption is lessened where a plaintiff files a preemptive declaratory judgment action in order to deprive the 'natural plaintiff' — the one who wishes to present a grievance for resolution by a court,' of its choice of forum." (Docket Entry 8 at 8 (quoting Piedmont Hawthorne Aviation, Inc. v. TriTech Env't Health & Safety, Inc., 402 F. Supp. 2d 609, 616 (M.D.N.C. 2005)).)

-25-

For its part, Plaintiff emphasizes the presumption favoring its own choice of forum (Docket Entry 9 at 10), the ease of electronic document transfer (id.), the location of likely witnesses outside Florida (id. at 10-11), the fact that Defendant owns property in North Carolina (for purposes of enforcing a judgment) (id. at 11), and North Carolina's interest in settling controversies concerning resident businesses (like Plaintiff) (id. at 12).

Based on the below assessment of the pertinent factors, the Court concludes that Defendant has carried its burden to show that the circumstances warrant transfer.

### i. Plaintiff's Initial Choice of Forum

"Generally, a plaintiff's choice of forum is entitled to substantial weight." Acterna, L.L.C. v. Adtech, Inc., 129 F. Supp. 2d 936, 938 (E.D. Va. 2001). However, "[t]he weight given [to] the plaintiff's choice varies in proportion to the connection between the forum and the cause of action. Thus, a plaintiff's choice of its home forum is given more weight than its choice of a foreign forum." GTE Wireless, Inc. v. Qualcomm, Inc., 71 F. Supp. 2d 517, 519 (E.D. Va. 2001). Courts also look to whether the "operative facts have [a] material connection with the chosen forum." Acterna, 129 F. Supp. 2d at 938.

Here, such factor merits less than "substantial weight," id., because the record reflects no significant connection between the Middle District of North Carolina and the parties' dispute. Although Plaintiff filed suit in its home forum (see Docket Entry

-26-

9-1, ¶ 4), the events leading up to this action occurred in the Northern District of Florida, where Plaintiff delivered the supposedly defective products (see Docket Entry 8-1 at 7) and where Defendant discovered the alleged defects (id. at 91 (notice from Defendant advising Plaintiff about problems with Units at "Hampton Inn Pensacola Beach . . . [in] Pensacola Beach, [Florida]")).[11]

        ii. Witness Convenience and Access to Proof

"When considering the ease of access to sources of proof, courts consider the availability of witnesses and other evidence for trial." IHFC Props., LLC v. APA Mktg., 850 F. Supp. 2d 604, 623 (M.D.N.C. 2012). "The party asserting witness inconvenience has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the

---

[11]  As concerns the nature of this action, the Court notes that Defendant likely qualifies as "the natural plaintiff," Piedmont Hawthorne Aviation, 402 F. Supp. 2d at 616, which normally enjoys the privilege of litigating in its home forum.  Courts have afforded less weight to the initial choice of forum when a litigant files "a suit for declaratory judgment aimed solely at wresting the choice of forum from the 'natural plaintiff,'" Hyatt Int'l Corp. v. Coco, 302 F.3d 707, 718 (7th Cir. 2002) (internal quotation marks omitted).  See also Piedmont Hawthorne Aviation, 402 F. Supp. 2d at 616 (citing Hyatt Int'l, 302 F.3d at 718).  However, because the Court found no procedural impropriety in Plaintiff's decision to initiate a declaratory action, see Phelps, 433 F. Supp. 2d at 721, the Court declines to fully discount the first discretionary factor for purposes of Section 1404(a), Plaintiff's initial choice of forum.

Case 1:19-cv-01184-LPA   Document 16   Filed 03/25/21   Page 27 of 32

degree of inconvenience." <u>Koh v. Microtek Int'l, Inc.</u>, 250 F. Supp. 2d 627, 636 (E.D. Va. 2003).[12]

Here, access to proof slightly favors transfer to the Northern District of Florida. As far as "employees or contractors having personal knowledge of the facts underlying this dispute" (Docket Entry 9-1, ¶ 13), Plaintiff has averred that such individuals live "outside the State of Florida" (<u>id.</u>). The Felsen Declaration identifies one potential third-party witness, "Adrian Caradine Contract Design, Inc., who . . . resides in Tennessee" (<u>id.</u>, ¶ 9). In similar fashion, Defendant has sworn that its "employees having personal knowledge of the facts underlying this dispute are located in Florida and would be substantially inconvenienced should [Defendant] have to litigate this claim in North Carolina." (Docket Entry 8-1, ¶ 16.) Neither affidavit offers particular details about the materiality of such witness testimony or the degree of inconvenience. (<u>See</u> <u>id.</u>; Docket Entry 9-1, ¶¶ 9, 13.) To the extent the resolution of the parties' dispute will require review of business records, Plaintiff has represented that such records reside in North Carolina (Docket Entry 9-1, ¶ 12), whereas Defendant stores its records in Florida (Docket Entry 8-1, ¶ 17). As far as other kinds of potential proof, Defendant has sworn that the Units remain in Florida. (<u>Id.</u>, ¶ 15.) Despite the Response's

_____

[12] "Although the moving party bears the ultimate burden of establishing the propriety of transfer, courts have imposed the burden of proffering details about witnesses and potential testimony to non-moving parties who oppose transfer on the ground of witness inconvenience." <u>D2L Ltd. v. Blackboard, Inc.</u>, 671 F. Supp. 2d 768, 780 n.17 (D. Md. 2009).

Case 1:19-cv-01184-LPA   Document 16   Filed 03/25/21   Page 28 of 32

contrary contention (see Docket Entry 9 at 11), the Court declines to deem the Units' physical condition wholly irrelevant at this stage.  Given that at least one of Plaintiff's potential witnesses may need to travel across state lines regardless of forum and given that Defendant has housed the supposedly defective Units in Florida, the second factor provides some support for transfer.

### iii. Convenience of Parties

"A mere shifting of the burden neither weighs in favor of retaining nor of transferring venue."  Intranexus, Inc. v. Siemens Med. Sols. Health Servs. Corp., 227 F. Supp. 2d 581, 585 (E.D. Va. 2002).  In general, "when plaintiffs file suit in their home forum, convenience to parties rarely, if ever, operates to justify transfer."  Board of Trs. v. Baylor Heating & Air Conditioning, Inc., 702 F. Supp. 1253, 1259 (E.D. Va. 1988).

Here, party inconvenience merits little weight, as transfer would merely shift the burden between the parties.

### iv. Interest of Justice

The "interest of justice" inquiry "encompass[es] those factors unrelated to witness and party convenience."  Acterna, 129 F. Supp. 2d at 939–40.  Two factors, in particular, warrant consideration under the circumstances: "local interest in having localized controversies settled at home," Plant Genetic Sys., 933 F. Supp. at 527, and "appropriateness in having a trial of a diversity case in a forum that is at home with the state law that must govern the action," id.

-29-

Turning first to the question of governing law, "federal courts in diversity of citizenship cases are governed by the conflict of laws rules of the courts of the states in which they sit." <u>Griffin v. McCoach</u>, 313 U.S. 498, 503 (1948). In the context of a transfer under Section 1404(a), "the transferor court's choice-of-law rules apply." <u>Pender v. Bank of Am. Corp.</u>, 788 F.3d 354, 369 (4th Cir. 2015). Accordingly, in this diversity action, the Court applies North Carolina's choice-of-law rules. "[U]nder North Carolina law, substantive questions of contract construction and interpretation are governed by the law of the state where the contract was made." <u>Piedmont Hawthorne Aviation, Inc. v. TriTech Env't Health & Safety, Inc.</u>, 402 F. Supp. 2d 609, 617 (M.D.N.C. 2005). "However, . . . when 'a contract is to be performed wholly outside the state in which the contract was made[,]' . . . the law of the place of performance governs." <u>Rizoti v. Plemmons</u>, 91 F. App'x 793, 796 (4th Cir. 2003) (quoting <u>Cocke v. Duke Univ.</u>, 260 N.C. 1, 8, 131 S.E. 2d 909, 913 (1963)).

Consistent with those principles, Florida law governs "contract construction and interpretation," <u>Piedmont Hawthorne Aviation</u>, 402 F. Supp. 2d at 617, in this case. Some uncertainty remains about where the parties "made" the contract (see Docket Entry 9-1, ¶ 10 (averring that parties communicated by electronic means)), but performance undoubtedly occurred upon delivery of the Units (among other items) to Defendant's warehouse in Pensacola, Florida. (<u>See</u> Docket Entry 8-1 at 7 (listing Defendant's address).) Defendant has advocated for the application of Florida law (<u>see</u>

Docket Entry 8 at 5-11), whereas Plaintiff has characterized the choice-of-law issue as "premature" (Docket Entry 9 at 4 n.2). Because the choice of governing law informs the transfer inquiry, the Court reaches the issue and concludes that such factor favors transfer to the Northern District of Florida.

As far as whether this controversy qualifies as "localized," Plant Genetic Sys., 933 F. Supp. at 527, the applicability of Florida law to a claim concerning a Florida citizen indicates that Florida courts possess an interest in resolving the controversy. See BHP Int'l Inv., Inc. v. Online Exch., Inc., 105 F. Supp. 2d 493, 499 (E.D. Va. 2000) ("Although this court could familiarize itself with [another state's] law for the purposes of the case at bar, the court finds that [the other state's] courts have a strong interest in having local controversies decided at home."). As a result, such factor favors transfer.

For the foregoing reasons, in order to facilitate access to potential proof and in the interest of justice, the Northern District of Florida constitutes a more appropriate forum.[13]

_____

[13] No party has addressed whether the Northern District of Florida qualifies as a proper venue where this action "might have been brought," Kotsonis, 539 F. Supp. at 645 (quoting 28 U.S.C. § 1404(a)).  (See Docket Entry 8 at 1-11; Docket Entry 9 at 1-12; Docket Entry 10 at 1-7.)  The applicable statute provides, in relevant part, that "[a] civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; [or] a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ."  28 U.S.C. § 1391(b)(1), (2).  Additionally, for venue purposes, an entity qualifies as a resident of "any judicial district in which such defendant is subject to the court's personal jurisdiction with
(continued...)

## <u>CONCLUSION</u>

At this stage, Plaintiff adequately has alleged an actual controversy, such that the Court possesses subject-matter jurisdiction to render a declaratory judgment, and Defendant has shown no "good reason," <u>Quarles</u>, 92 F.2d at 324, for the Court to decline to exercise such jurisdiction. Additionally, the Northern District of Florida may exercise specific personal jurisdiction over Plaintiff consistent with Florida's long-arm statute and due-process principles. Finally, the balance of factors under Section 1404(a) weighs in favor of transfer, given the location of the Units in Florida, the applicability of Florida law, and the interest of Florida courts in resolving such controversy.

**IT IS THEREFORE ORDERED** that Defendant's Motion (Docket Entry 7) is **DENIED IN PART** and **GRANTED IN PART,** such that the Court will deny Defendant's request to dismiss this action but will transfer this action to the Northern District of Florida.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

March 25, 2021

---

[13](...continued) respect to the civil action in question." <u>Id.</u> § 1391(c). Here, the Northern District of Florida constitutes a proper venue under Section 1391 because (i) Defendant resides in that district (with its principal place of business in Gulf Breeze, Florida (Docket Entry 8-1, ¶ 18)), (ii) Plaintiff remains subject to personal jurisdiction in that district, and (iii) "a substantial part of the events or omissions giving rise to the claim occurred," <u>id.</u> § 1391(b)(2), in that district.